STATE OF MINNESOTA *vs.* BANK OF NEW ENGLAND.

Argued Oct. 20, 1893. Reversed Oct. 27, 1893.

No. 8409.

**Receiver in action under 1878 G. S. ch. 76.**

In an action under 1878 G. S. ch. 76, while, before the formal determination of any issue upon the plaintiff's allegations essential to sustain the action, or upon facts alleged in defense, it is discretionary with the court to appoint a receiver or not, yet before such formal determination, if it is admitted that the facts which give the right of action exist, and there is no defense, it will be an abuse of discretion to refuse to appoint a receiver.

**Injunction in same action.**

It is the same with regard to issuing an injunction.

**The action under ch. 76 not defeated by assignment under Laws 1881, ch. 148.**

When a creditor has commenced an action under that chapter, an assignment by the corporation under the insolvent law of 1881 will not defeat nor impair the creditor's right to the remedy by his action commenced.

Appeal by plaintiff, the State of Minnesota, from an order of the District Court of Hennepin County, *Thomas Canty*, J., made July 17, 1893, refusing to appoint a receiver and to grant an injunction.

The defendant, the Bank of New England was a corporation having banking powers. It was organized in December, 1891, under 1878 G. S. ch. 33, and was located and doing business in the Guaranty Loan Building at Minneapolis. Its capital was $100,000.

| 55 | 139 |
| 57 | 557 |
| 55 | 139 |
| 58 | 436 |
| 55 | 139 |
| 60 | 356 |
| 55 | 139 |
| 66 | 382 |
| 55 | 139 |
| 73 | 215 |
| 73 | 461 |
| 55 | 139 |
| 84 | 151 |

The State Treasurer deposited public funds in this Bank under 1878 G. S. ch. 6, § 37, as amended. The Bank became insolvent and unable to pay on demand checks, drafts and orders drawn upon it in the due course of business. On June 24, 1893, it closed its doors and suspended payment. It was indebted to the State $61,331.15, and to other creditors large sums of money. It owned and had possession of promissory notes, choses in action and property worth over $100,000. On July 6, 1893, the Attorney General commenced this action in the name and on behalf of the State, under 1878 G. S. ch. 76. In the complaint these facts were stated and the prayer was, that the Bank be adjudged insolvent and that an injunction issue restraining it from exercising corporate rights and from collecting its assets or paying out or transferring any of its money or property and that a receiver be appointed to take charge of all the property of the corporation and collect and convert it into money and that the State have such other and further relief as to the Court might seem just. On that day an order was obtained from a Judge of the District Court directing the defendant to show cause if any there was, before the Court on July 15, 1893, why it and its officers should not be thus restrained pending the action and why a receiver should not be appointed at once to take charge of its property and effects. The complaint and a summons in the action and a copy of said order were served by the Sheriff on July 6, 1893, at one o'clock in the afternoon upon Alden J. Blethen, President, F. M. Morgan, Cashier, and L. A. Reed, one of the board of directors of the Bank.

On the same day at three o'clock in the afternoon the Bank made and filed an assignment of its property in trust for its creditors under Laws 1881, ch. 148, as amended, to John P. Rea, one of its directors and its attorney. Rea accepted the trust and next day made and filed his bond and took possession of the property of the Bank. At the hearing before the Court on July 15, 1893, these facts were shown and after argument the Court discharged the order to show cause and declined to issue an injunction or appoint a receiver. On July 27, 1893, a case containing the assignment and all the papers, proofs, files, orders and a narrative of the proceedings was settled, signed and filed and the plaintiff appealed to this Court.

*H. W. Childs*, Attorney General, and *George B. Edgerton*, his assistant, for appellant.

The insolvency law of 1881 was not intended to affect 1878 G. S. ch. 76, in any way. This statute was passed with reference to certain corporations created by statute and does not apply generally to an insolvent debtor as is the case with the insolvency law of 1881. By the restraining order issued in this case and served before the assignment was filed, the plaintiff obtained a prior right and the defendant Bank in making an assignment acted without authority of law and in contempt of Court.

A director is not a proper person to be assignee and have charge of the estate, for the present condition of the Bank is in part due to his neglect of duty as a director for which the law holds him accountable under the circumstances in this case. *Atkins* v. *Wabash, St. L. & P. R. Co.*, 29 Fed. R. 161; *Attorney General* v. *President & Co. of Bank of Columbia*, 1 Paige, 510; *Freeholders of Middlesex* v. *State Bank*, 28 N. J. Eq. 166; *Wiswell* v. *Starr*, 48 Me. 401; *Baker* v. *Backus*, 32 Ill. 79; Beach on Receivers, § 33.

*Kitchel, Cohen & Shaw*, for respondent.

The proceedings under 1878 G. S. ch. 76, did not prevent a valid assignment under the Insolvency Law of 1881 as amended. The record fails to show a service of the restraining order, prior to the making of the assignment, upon more than two of the directors of the Bank. There is no evidence anywhere in the record that knowledge of the restraining order came to any of the directors who took part in the making of the assignment. Notice to an individual director who has no duty to perform in relation to the subject matter of such notice is not a good constructive notice to the corporation. *Fulton Bank* v. *New York & Sharon Canal Co.*, 4 Paige, 126; *Bank of Pittsburg* v. *Whitehead*, 10 Watts, 397; *Custer* v. *Tompkins Co. Bank*, 9 Pa. St. 27; *Farrel Foundry* v. *Dart*, 26 Conn. 376; *General Ins. Co.* v. *United States Ins. Co.* 10 Md. 517.

The assignment for the benefit of creditors was a proceeding in the same direction as the creation of a receivership under 1878 G. S. ch. 76, and accomplished the same purpose. The insolvency act of 1881 is applicable to private corporations. *Tripp* v. *North-*

*western National Bank,* 41 Minn. 400. Under that act the pendency of an application for a receivership does not prevent the making of a valid assignment for the benefit of creditors. *Hyde* v. *Weitzner,* 45 Minn. 35; *St. Louis Car Co.* v. *Stillwater St. Ry. Co.,* 53 Minn. 129.

There was no abuse of the discretion of the lower Court in refusing to appoint a receiver. All the authorities are agreed that the appointment of a receiver rests in the sound discretion of the Court. *Hyde* v. *Weitzner,* 45 Minn. 35; *Covert* v. *Rogers,* 38 Mich. 363.

The plaintiff's proper remedy is an application to remove the assignee.

GILFILLAN, C. J. This is an action under 1878 G. S. ch. 76, by the attorney general on behalf of the state as a creditor against the defendant, an insolvent banking corporation. On the complaint and an affidavit, which made a case for the appointment of a receiver and for an injunction, an order was granted requiring the defendant to show cause why a receiver should not be appointed, and an injunction issued. At the time specified in the order the defendant did not attempt to show cause otherwise than by showing that after the commencement of the action it had made an assignment under the insolvency law of 1881 of all its property for the benefit of its creditors. On this showing the court refused to appoint a receiver or issue an injunction. The state appeals from the order so refusing.

Chapter 76 provides but a mere skeleton of procedure for the action authorized by it. Its provisions are very meager. But it gives an action to the creditor of a corporation whenever it is in the condition, or is guilty of the acts or omission, specified in the chapter. The action is given for a remedy which the creditor is entitled to as a matter of right, and which does not rest in the discretion of the court. It is the duty of the court to make the action effectual, and to exercise for that purpose the powers vested in it. Thus the court must appoint a receiver when it has been determined that a case exists under the chapter for the conversion and distribution among creditors of the property of the corporation, for it is only by means of a receiver that the property can

be collected and preserved, and its conversion and distribution effected. To say that in such case the court may, in its discretion, appoint or refuse to appoint a receiver, is to say that it may, in its discretion, grant or refuse the remedy given by the statute. Before a formal determination of an issue upon any of the plaintiff's allegations of fact essential to sustain the action or of facts alleged by defendant constituting a defense, it is in the sound discretion of the court to appoint or refuse to appoint a receiver. The appointment in such case is in the nature of a provisional remedy— a measure of precaution—to preserve the property to abide the determination of the issues on which plaintiff's right to have the defendant's property converted and distributed depends. But when on an application for such a receiver it appears that the court must finally convert and distribute the property,—in other words, when it is admitted that the facts which, under the statute, give the right to the action, exist, and there is no defense,—it would be an abuse of discretion to refuse to appoint a receiver to take charge of and preserve the property until the court shall order it converted, and the proceeds distributed.

What we have said of the appointment of a receiver applies equally to the issuing of an injunction.

We are satisfied, however, that the court did not refuse to appoint a receiver and to issue an injunction as a matter of discretion, but on the ground that the assignment by the defendant furnished a legal reason for refusing, and under the opinion that the case comes within the decision of *Hyde* v. *Weitzner,* 45 Minn. 35, (47 N. W. Rep. 311.) The cases, however, are not analogous. In that case the same end had been accomplished by the assignment which the petitioning creditors sought to have accomplished by the appointment of a receiver, to wit, the institution of an insolvency proceeding under the act of 1881. The only change which the appointment of a receiver would have effected would have been in the official name of the officer of the court, by designating him "receiver" instead of "assignee." And this court held that, although the assignment was made pending the application for a receiver, the court might allow it to stand instead of appointing a receiver. But in this case the two proceedings, while resembling each other in some particulars, are yet entirely different.

We need mention but two particular features of chapter 76 affecting the rights of the creditors: First, in an action under that chapter no releases are required as a condition of sharing in the distribution of the proceeds of the defendant's property; second, in such an action the creditors may have the directors or stockholders brought in to answer to any liability which the law imposes on them in favor of creditors of the corporation. The chapter gives a much larger remedy to the creditor than he can have under the insolvency law. It must be evident that the two proceedings—the action under chapter 76 and the insolvency proceeding under the act of 1881—cannot go on effectually together against the same corporation. If the two are commenced, one must stand and the other give way. Now, without determining whether by being commenced first the insolvency proceeding gets a preference so that the remedy of any creditor shall be confined to such as the insolvent law affords, we do not hesitate to hold that when a creditor has commenced his action under chapter 76 no subsequent act on the part of the corporation, or of any other creditor of the corporation, by making an assignment, or procuring the appointment of a receiver under the insolvent law, or otherwise, can defeat or impair his remedy by such action.

Order reversed.

(Opinion published 56 N. W. Rep. 575.)